FILED

JUN 17 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| CARMA TECHNOLOGY, CORP., CARMA TECHNOLOGY, LTD. <br><br> Movants, <br><br> v. <br><br> TRAVIS KALANICK, <br><br> Respondent. | Misc. No.: **1:26MC01651RP** |

## CARMA TECHNOLOGY, CORP. AND CARMA TECHNOLOGY, LTD.'S MOTION TO COMPEL NON-PARTY TRAVIS KALANICK TO COMPLY WITH SUBPOENA

RECEIVED

JUN 17 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
        DEPUTY CLERK

## TABLE OF CONTENTS

<u>Page</u>

I.  BACKGROUND ........................................................................................................ 1

II.  LEGAL STANDARD............................................................................................. 3

III.  ARGUMENT.......................................................................................................... 4

     A.  Carma Issued a Valid Subpoena on Mr. Kalanick.................................... 4

     B.  Mr. Kalanick Has Relevant Knowledge to the Carma-Uber Litigation................... 5

     C.  Carma Has Been Diligent In Pursuing Mr. Kalanick's Deposition ......................... 6

IV.  CONCLUSION...................................................................................................... 6

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Collins v. Koch Foods, Inc.,*
119-008-JRH, 2019 WL 2520308 (S.D. Ga. 2019) ................................................................3

*CSS, Inc. v. Herrington,*
354 F. Supp. 3d 702 (N.D. Tex. 2017) .................................................................................3

*Fam. One v. Isaacks,*
No. 9:22-CV-00028-MJT, 2023 WL 4503537 (E.D. Tex. Apr. 25,
2023) ....................................................................................................................................3

*Smith West Texas Properties Ltd. v. Allied Property & Casualty Ins. Co.,*
18-cv-137-DC, 2020 WL 6365540 (W.D. Tex. 2020) ..........................................................3

**RULES**

Fed. R. Civ. P. 45(c) .....................................................................................................................3

Fed. R. Civ. P. 45(c)(2)(A) ........................................................................................................3, 6

Fed. R. Civ. P. 45(d)(2)(B)(i) ........................................................................................................3

Fed. R. Civ. P. 45(d)(3).................................................................................................................3

Carma respectfully requests an Order compelling Travis Kalanick to testify at a deposition to aid in the ongoing litigation between Carma Technology, Corp. and Carma Technology, Ltd. ("Carma") and Uber Technologies, Inc., Uber Freight Holding Corporation, and Uber Freight US LLC ("Uber") in the Eastern District of Texas, Case No. 2:25-CV-00029-JRG-RSP.

## I.    BACKGROUND

In a suit filed on January 14, 2024, Carma alleges that Uber infringes five patents related to ridesharing technology through its provision of services for rider transport and delivery of goods. Each of the asserted patents in the case claims priority to a provisional application filed in 2007 by Sean O'Sullivan, the founder of Carma. The details of the relevant factual background are detailed in Carma's First Amended Complaint, attached hereto as Exhibit 5 to the Declaration of Eric Carr.

Carma's ridesharing app and service were available in the marketplace from approximately 2008-2013 branded as Avego, and then from 2013-2016, rebranded as Carma. San Franciso was one of Avego/Carma's primary operating regions. It was in this same small geographic region where Mr. Kalanick, along with the other founders, began UberCab (later known as Uber) in 2009-2010. Uber is widely reported to keep, and have kept, close tabs on its competitors, and in 2010, Avego and UberCab were the only two ridesharing companies operating in the region. With respect to Uber's knowledge of its ridesharing competitors, there can be no doubt that Mr. Kalanick, and his early cofounders at Uber, would be the only ones with unique knowledge in this timeframe.

In addition, as Carma alleged in its complaint, in 2013, the Avego/Carma app was hailed as a hero and widely publicized in the San Francisco Bay Area following the BART (Bay Area Rapid Transit) strike because it was the only service that allowed strangers to orchestrate a rideshare and get into the carpool lanes. The following year Uber released its Uber Pool service to that same end. Mr. Kalanick's knowledge of Carma and its services in this timeframe are also relevant.

-1-

-2-

Perhaps most critical, however, is Mr. Kalanick's knowledge of Mr. O'Sullivan's patents, including the asserted patents. For example, in 2015, one of Uber's (and Mr. Kalanick's) earliest patent applications was rejected over the patent application that led to the asserted patents, which is known as the "O'Sullivan reference." Despite six years of ongoing prosecution efforts by Uber, including numerous attempts to distinguish the O'Sullivan reference, Mr. Kalanick's application was never granted over Mr. O'Sullivan's disclosure. This was not a one-off occurrence. There are many patents naming Mr. Kalanick as inventor that were rejected over and cite to Mr. O'Sullivan's patent application and patents. All of this information is relevant to Mr. Kalanick's and Uber's knowledge of the patents at issue and Carma's claims of willful infringement in the litigation.

Finally, it also deserves mention that Carma placed Uber on notice of infringement in 2016, when Mr. Kalanick was still CEO of Uber. Mr. Kalanick's knowledge of Carma, its assertion of infringement, Uber's subsequent actions are therefore also relevant to Carma's willful infringement.

Counsel for Carma and counsel for Mr. Kalanick had productive negotiations over the last several months, and on April 3, 2026, Mr. Kalanick produced documents responsive to Carma's subpoena. Ex. 4 at 6. Those documents and others produced in the case confirm that Uber was monitoring competitors in the marketplace, including Carma, in those early years. There is also no dispute that Mr. Kalanick's patent applications were rejected based on the application that led to the asserted patents in this case (i.e., the O'Sullivan reference). And Carma has confirmed, including through recent depositions of Uber witnesses, that no individual currently at Uber has knowledge about the competitive investigations done in the early years, nor does anyone else have knowledge about what Mr. Kalanick knew about Carma's patents during the prosecution of the patents which were rejected over Carma's. Nevertheless, Mr. Kalanick has recently refused to sit for a deposition.

As a result, Carma requests that Mr. Kalanick be compelled to sit for his noticed deposition.

-2-

-3-

## II.    LEGAL STANDARD

A valid place of compliance for a Rule 45 document subpoena is the location commanded for "production of documents, electronically stored information, or tangible things within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). The appropriate jurisdiction for motions to compel, modify, or quash is "the court for the district where compliance is required[.]" Rule 45(d)(2)(B)(i). "Like other district courts in Texas, the [Western District] is of the opinion that for purposes of a Rule 45(d)(2) or 45(d)(3) motion, the court or district 'where compliance is required' is determined by the location or 'place' for compliance identified on the subpoena as required by Rule 45(a)(1)(A)(iii)." *Smith West Texas Properties Ltd. v. Allied Property & Casualty Ins. Co.*, 18-cv-137-DC, 2020 WL 6365540 (W.D. Tex. 2020) (quoting *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 709 (N.D. Tex. 2017)). The locale where a subpoena is served is irrelevant. *Collins v. Koch Foods, Inc.*, 119-008-JRH, 2019 WL 2520308 (S.D. Ga. 2019) ("The prevailing rule across federal courts is that a subpoena's place of compliance is the district where documents are to be produced."); Fed. R. Civ. P. 45(c) Advisory Committee's Notes ("Unlike the prior rule, place of service is not critical to place of compliance.").

Generally, Rule 45 requires that disputes related to non-party subpoenas be resolved locally, to avoid imposing undue travel or expense burdens on non-parties who are challenging a subpoena. *See, e.g.*, Fed. R. Civ. P. 45(d)(2)(B)(i) (directing that motions to compel be filed in "the district in which compliance is required"). The Apex Doctrine is not a doctrine to shield an executive from producing relevant documents, and even with respect to depositions, "the 'apex doctrine' is inapplicable in federal court." *Fam. One v. Isaacks*, No. 9:22-CV-00028-MJT, 2023 WL 4503537, at *5 (E.D. Tex. Apr. 25, 2023) (further noting that [i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would

likely be in error").

## III.    ARGUMENT

Carma respectfully requests that Mr. Kalanick be compelled to sit for deposition.

### A.    Carma Issued a Valid Subpoena on Mr. Kalanick

Given Mr. Kalanick's involvement in the early founding of Uber, the rejection of his own patents over Carma's, and the few individuals that remain at Uber from the relevant timeframe, Carma issued both a deposition and document subpoena from the Eastern District of Texas dated October 7, 2025 to Mr. Kalanick. *See* Ex. A (First Subpoena to Kalanick). The place of compliance for both was noticed for California, where Mr. Kalanick appeared to have his primary residence. Mr. Kalanick duly engaged counsel in the Northern District of California (Palo Alto, California). As noted above, counsel for Carma and Mr. Kalanick have been corresponding for several months.

More recently, however, Carma has learned that Mr. Kalanick has made Austin, Texas his primary residence.[1] "Just to be clear, on December 18, I moved to Texas. I don't know what's so specific about December 18, but let's just say it's prior to January," Kalanick said in an interview with TPBN.[2]  Mr. Kalanick further stated that "[o]n December 18th, I moved to Texas.". "So, I'm a primary resident of Texas."[3] Although his actual address appears to be private there is at least one address that reflects Mr. Kalanick as a tenant 1446 Rockcliff Rd, Austin TX 78746.[4] After Carma

---

[1] *See* https://texastoday.com/tech-billionaire-travis-kalanick-joins-austins-silicon-hills-boom/; *see also* https://nylahome.co.uk/travis-kalanick-house-lake-austin/

[2] *See* https://www.foxbusiness.com/real-estate/billionaire-uber-co-founder-travis-kalanick-admits-strategically-moving-texas-before-california-wealth-tax

[3]*See* https://www.chron.com/business/technology/article/california-billionaire-former-uber-ceo-travis-22078101.php

[4]*See* https://www.fastpeoplesearch.com/address/1446-rockcliff-rd_austin-tx-78746

learned that Mr. Kalanick moved his primary residence to this District, Carma served a second subpoena with a place of compliance in Austin, Texas. *See* Ex. B (Second Subpoena to Kalanick).

**B.      Mr. Kalanick Has Relevant Knowledge to the Carma-Uber Litigation**

Mr. Kalanick's testimony will aid Carma in the underlying action by providing insight into the extent that he, his cofounders, and Uber overall knew of Carma's patents and products during the relevant timeframe. The testimony will help determine if Uber was willfully blind or intentionally copying Carma as outlined in the Background section above. For example, Mr. Kalanick was a named inventor on several patent applications at Uber that were rejected by the European Patent Office and the United States Patent Office. *See* Ex. 5, Carma's First Amended Complaint at ¶¶ 65-68. Also, during the prosecution of Uber's patent portfolio, Uber has cited and referenced Carma's patents more than 60 times. *Id.* at ¶¶ 69-72. The deposition will allow Carma to ask Mr. Kalanick about Uber's competitive intelligence and monitoring of Carma's activities. Further, Mr. Kalanick knew of Carma during the relevant timeframe and has discoverable information relevant to Carma's claims in the underlying action. For example, Mr. Kalanick was aware of the Avego app and/or Avego products and services at least by the end of July 2013 following the BART strike, particularly because Avego's services were well publicized in the region. During the BART strike, Uber did not have a carpooling option. It was not until sometime in 2014, that Uber released its UberPool carsharing service, and not until May 2022 that it released its Driver Destination feature. Consequently, Mr. Kalanick will be able to testify about Uber's knowledge of the carpooling options provided by companies prior to Uber's release of UberPool and UberX Share.

Accordingly, Carma requests this Court to compel the deposition of Mr. Kalanick to learn about his knowledge of the Avego product and the related patents in the underlying litigation.

-6-

### C.     Carma Has Been Diligent In Pursuing Mr. Kalanick's Deposition

Carma acted diligently in pursuing the deposition of Mr. Kalanick. Counsel for Carma began substantive communications with Mr. Kalanick's lawyer in November of 2025. *See* Ex. 3. These communications led to the production of documents on April 3, 2026. After documents were produce, on May 28, 2026, Counsel for Carma requested a 2-hour deposition of Mr. Kalanick. Ex. 4 at 4. On June 1, 2026, Counsel for Mr. Kalanick alleged that he has no information relevant to the lawsuit despite the foregoing. On June 10, 2026, after another request for deposition, Counsel for Mr. Kalanick stated, "we are unwilling to make Mr. Kalanick available for deposition." *Id.* at 1.

Before filing this motion, Carma was justified in issuing an almost identical deposition subpoena on June 15, 2026, that specifies compliance near the location of Kalanick's primary residence because a subpoena for testimony may require production "at a place within 100 miles of where the person resides." Fed. R. Civ. P. 45(c)(2)(A) (emphasis added). *See* Ex. B. The first deposition subpoena specified a location of compliance in California based on Carma's information related to Mr. Kalanick's residence at that time. *See* Ex. A. Regardless, the location of compliance should not matter because Carma is requesting a remote deposition.

## IV.     CONCLUSION

For the reasons described above, Carma respectfully requests the Court order Mr. Kalanick to testify at a 2-hour remote deposition.

-6-

Dated:  June 16, 2026

Respectfully submitted,

*/s/ Eric Carr*

Eric Carr
Texas State Bar No. 24091261
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
(415) 426-4728 telephone
(415) 426-4744 facsimile
ecarr@bdiplaw.com

***Attorney for Movants***